***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Gregory. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gregory.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Employer was duly self-insured at all relevant times herein. The third-party administrator is Key Risk Management.
4. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between defendant-employer and plaintiff on February 1, 2000, the alleged date of injury.
6. Plaintiff's claim is for a hand injury arising out of an accident in the scope and course of his employment which occurred on February 1, 2000.
7. Plaintiff's average weekly wage at the time of the accident was $511.82, yielding a compensation rate of $341.21.
8. Copies of the medical records and reports of plaintiff's various health care providers may be introduced into evidence without further proof of authenticity.
9. Copies of the documents filed with the Industrial Commission pertaining to this matter may be introduced into evidence without further proof of authenticity.
10. Plaintiff contends that the contested issue to be tried by the court is as follows: To what benefits is plaintiff entitled?
11. Defendants contend that the contested issues to be tried by the court are as follows: What additional benefits, if any, is the plaintiff entitled to recover from defendants?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 40 years old and had completed two years of community college courses. At the time of his injury, plaintiff was employed as a corrections officer at the Hoke County Corrections Facility where he was employed for over nine years. Plaintiff's duties included opening and closing gates and cell doors, transporting inmates, taking statements after inmate altercations, writing shift narratives, searching inmates, using hand cuffs and leg restraints on inmates, and restraining inmates, among other duties.
2. On February 1, 2000, plaintiff suffered an admittedly compensable injury by accident to his right hand while at work, when unlocking a cell door in the course and scope of his employment.
3. Following his injury on February 1, 2000, plaintiff was treated conservatively by Dr. Louis P. Clark at the Cape Fear Orthopaedic clinic in Fayetteville. On May 12, 2000, Dr. Clark performed surgery for the removal of arthritic spurring in the area of the second and third metacarpal. On December 12, 2000, Dr. Clark found that plaintiff had a 5% permanent partial impairment of the right hand. Pursuant to a Form 21 Agreement approved by the Commission on March 1, 2001, plaintiff was paid 10 weeks of benefits for the 5% permanent partial disability of the right hand. Plaintiff was unable to work for approximately six weeks between May 2000 and June 2000. According to Key Risk adjuster Nancy Swinson, plaintiff was paid salary continuation for all periods that he was unable to work pursuant to N.C.G.S. § 143-166-13 et seq.
4. Plaintiff continued to complain of pain, cramping and discomfort in the area of the surgical incision. Therefore, on April 5, 2001, plaintiff requested that Dr. Clark refer him for a second opinion evaluation, which was approved by defendants. On May 1, 2001, plaintiff was evaluated by Dr. James P. Askins, an orthopaedist associated with the Fayetteville Orthopaedic Clinic. Dr. Askins found that no further surgery or other treatment was indicated. Furthermore, Dr. Askins concurred with the 5% permanent partial impairment to the right hand assigned by Dr. Clark.
5. Plaintiff's complaints regarding his right hand continued. Therefore, plaintiff requested an additional opinion and evaluation, specifically from Dr. Jon Kolkin, a board certified orthopaedic surgeon with a certified subspecialty in hand and upper extremity surgery with the Raleigh Hand Center. Dr. Kolkin had previously treated plaintiff in 1998 for an unrelated problem with his left hand. Defendants authorized the evaluation by Dr. Kolkin who saw plaintiff on July 12, 2001. Dr. Kolkin initially treated plaintiff conservatively. However, when plaintiff's complaints did not respond to conservative treatment, Dr. Kolkin eventually recommended further surgery to fuse the joint at the second metacarpal. Dr. Kolkin performed the surgery on September 26, 2001.
6. Following the surgery by Dr. Kolkin, plaintiff underwent physical therapy and returned to light duty work in December of 2001. Plaintiff continued physical therapy and was eventually returned to full duty work sometime between January 2002 and February 6, 2002, at which time a Form 28 was filed with the Commission. While the physical therapist placed initial restrictions on plaintiff as late as January 17, 2002, the greater weight of the evidence of record demonstrates that plaintiff was in fact released to full duty by Dr. Kolkin. However, plaintiff continued to complain of swelling, pain and discomfort in his right hand and wrist. In addition, plaintiff had an unrelated benign cyst on his right wrist, which was not the cause of plaintiff's residual complaints.
7. On March 28, 2002, Dr. Kolkin who was aware of plaintiff's residual complaints of swelling and pain, which had somewhat increased, found that plaintiff had a total 12% permanent partial impairment of the right hand and released him to return to full duty without restrictions. Dr. Kolkin and plaintiff discussed plaintiff's reservations about restraining prisoners but Dr. Kolkin felt that plaintiff was capable of returning to his former position. Dr. Kolkin was familiar with plaintiff's job duties but had an opportunity at the deposition to review all of plaintiff's specific duties and remained of the opinion that plaintiff could perform his regular job. Dr. Kolkin had no further treatment to offer plaintiff and suggested that plaintiff would benefit from using his hand.
8. Plaintiff's coworker Sylvia Crumpler testified that she performed the majority of the writing duties for plaintiff who complained to her of pain. Ms. Crumpler further testified that as part of her job she would rely on plaintiff in any situation where restraining a prisoner was necessary and that she had some concerns about his ability due to his hand injury. Ms. Crumpler's reservations were based on plaintiff's complaints to her. Ms. Crumpler's opinion is given less weight than that of Dr. Kolkin concerning plaintiff's ability to perform his job duties.
9. On April 25, 2002, a Form 26 Agreement was entered into between the parties for plaintiff's additional 7% permanent partial impairment. Thereafter, plaintiff executed this agreement, which was forwarded to the Commission for approval.
10. Plaintiff continued to complain of pain and returned to Dr. Kolkin on April 29, 2002 requesting pain medication. Dr. Kolkin continued to feel that there was no further treatment to offer plaintiff and recommended that plaintiff see his family physician, Dr. Carolyn Sampson with Fayetteville Family Medical Care, for management of his pain medication, as there was no need for continued orthopaedic care. Dr. Kolkin did not change his opinion regarding plaintiff's ability to work and plaintiff was not written out of work. However, plaintiff did not return to work after April 29, 2002 even though plaintiff testified that he knew he had been released to return to work without restrictions by his treating physician and that his job was available for him at that time. Plaintiff contends that his pain got worse.
11. On April 30, 2002, one day after his last visit to Dr. Kolkin, plaintiff was examined by Dr. Sampson for continued complaints of pain. Although plaintiff was directed to Dr. Sampson for pain medication, Dr. Sampson ordered additional testing including an MRI, which was performed on May 5, 2002.
12. On May 28, 2002, the Form 26 Agreement entered into by the parties on April 25, 2002 was approved by the Commission, and plaintiff was paid an additional 14 weeks of permanent partial disability compensation for the additional 7% disability assigned by Dr. Kolkin.
13. On May 29, 2002, Dr. Sampson restricted plaintiff from work. This recommendation by Dr. Sampson represents a difference of opinion from Dr. Kolkin rather than a significant change of condition on the part of plaintiff. In fact, Dr. Sampson noted that plaintiff's pain was essentially the same as it was on April 30, 2002. Furthermore, the opinions of Dr. Kolkin are given more weight than those of Dr. Sampson. Dr. Sampson also recommended that plaintiff be evaluated by an orthopaedic specialist for concerns regarding the fusion. Dr. Sampson did not return plaintiff to Dr. Kolkin but instead referred plaintiff to Dr. Terry M. Messer, a board eligible orthopaedist, due to the fact that plaintiff's health insurance would cover an evaluation by Dr. Messer and because Dr. Sampson understood that Dr. Kolkin had no further treatment to offer.
14. On August 13, 2002, prior to plaintiff's first appointment with Dr. Messer, plaintiff moved the Commission for an Order authorizing additional treatment by Dr. Messer, for change of condition, and for change of treating physician. Defendant objected to plaintiff's motion, and by Order dated October 10, 2002, the Commission allowed a one time only visit with Dr. Messer, deferring all other issues in dispute for full evidentiary hearing. However, plaintiff was seen by Dr. Messer on three occasions.
15. On August 28, 2002, plaintiff was first seen by Dr. Messer who examined plaintiff and reviewed the May 5, 2002 MRI. Dr. Messer was concerned about the fusion and eventually ordered a CT scan.
16. Dr. Sampson continued to restrict plaintiff from work and eventually reviewed plaintiff's Essential Job Functions and completed forms on August 1, 2002, August 27, 2002, and September 30, 2002 respectively and in which she identified particular job functions, which she believed plaintiff could not perform. While Dr. Sampson was concerned about plaintiff's fusion and relied on the May 5, 2002 MRI, the CT scan, which was later obtained by Dr. Messer revealed that there was no concern of non-union of the fusion.
17. On January 8, 2003, Dr. Messer again examined plaintiff whose symptoms had been consistent throughout his treatment. Dr. Messer also reviewed the CT scan, which revealed a completed union and fusion. Accordingly, Dr. Messer could find no explanation for plaintiff's continued pain and reported that he could identify no further treatment options for plaintiff other than possibly a pain clinic, which Dr. Messer did not feel would benefit plaintiff due to the fact that plaintiff has already participated in a lengthy course of therapy. Like Dr. Kolkin, Dr. Messer released plaintiff with no follow up appointment indicated. Dr. Messer essentially agreed with Dr. Kolkin's opinions, although Dr. Messer restricted plaintiff from working as a corrections officer. Dr. Messer concluded that plaintiff should use his hand to the extent he could tolerate. Dr. Messer's opinion that plaintiff could not perform all of the essential functions of a corrections officer represents a difference of opinion from Dr. Kolkin and not a substantial change of condition on the part of plaintiff.
18. During his deposition, Dr. Kolkin was shown not only a written description of plaintiff's specific essential job functions but also plaintiff's May 5, 2002 MRI report, as well as a copy of Dr. Sampson's clinical notes regarding plaintiff. Dr. Kolkin reviewed the documents and concluded that nothing contained therein would change his opinion regarding plaintiff's condition.
19. As of March 28, 2002, plaintiff had reached maximum medical improvement, had been rated and released to work without restrictions by Dr. Kolkin who was plaintiff's treating physician. A final award was entered and plaintiff's supplemental rating was paid by defendants pursuant to a Form 26 approved by the Commission on May 28, 2002. Thereafter, plaintiff contends that he suffered a substantial change of condition. However, the medical evidence of record fails to prove that plaintiff suffered a substantial change of condition. While plaintiff contends that his pain worsened, Dr. Kolkin was aware of plaintiff's pain complaints and residual swelling as of the time plaintiff was rated and released at maximum medical improvement. Furthermore, the greater weight of the evidence fails to prove that plaintiff's pain substantially worsened following his last visit with Dr. Kolkin. Finally, none of plaintiff's physicians were of the opinion that plaintiff had undergone a substantial change of condition.
20. Plaintiff also contends that he has experienced a failed trial return to work. However, as plaintiff was released to full duty by Dr. Kolkin and a final award of permanent partial disability pursuant to a Form 26 has been entered and approved by the Commission, the provisions of trial return to work do not apply. Nevertheless, as Dr. Kolkin's opinions are given greater weight than any medical or lay evidence to the contrary, any opinion removing plaintiff from work or supporting that plaintiff has undergone a failed trial return to work is given little weight.
21. Dr. Kolkin is in the best position to remain plaintiff's treating physician from an orthopaedic standpoint, if plaintiff is in need of further orthopaedic treatment. However, based upon the greater weight of the evidence of record, there are no treatment options available for plaintiff from an orthopaedic standpoint. Nevertheless, as originally recommended by Dr. Kolkin, plaintiff may benefit from pain medication treatment by Dr. Sampson. However, the greater weight of the evidence including the testimony of Drs. Kolkin and Messer, fails to prove that plaintiff would benefit from any formal pain management therapy or pain clinic. Therefore, it is appropriate for Dr. Sampson to be one of plaintiff's treating physicians for the purpose of managing plaintiff's pain medication as recommended by Dr. Kolkin in order to effect a cure or provide relief.
22. While the Commission Order filed October 10, 2002 allowed a one-time evaluation by Dr. Messer for plaintiff, plaintiff was in fact seen on three occasions by Dr. Messer who obtained a CT scan. Plaintiff requested this treatment within a reasonable time and plaintiff benefited from this treatment and diagnostic testing, which ruled out any post-surgery difficulty with the fusion.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish by the greater weight of the evidence, medical and otherwise, that he underwent a substantial change of condition to his right hand and wrist following March 28, 2002, when he was rated and released to return to work without restrictions by his treating physician, Dr. Kolkin. Therefore, plaintiff is entitled to no temporary total, temporary partial or permanent partial disability benefits under the Act. N.C. Gen. Stat. § 97-47.
2. Plaintiff has failed to prove that he sustained a failed trial return to work within the meaning of the Act. N.C. Gen. Stat. § 97-32.1; NCIC Rule 404A.
3. Plaintiff is not entitled to a change of treating physicians from Dr. Kolkin to Dr. Messer. However, plaintiff is entitled to have defendants pay for Dr. Messer's three evaluations and for the CT scan Dr. Messer obtained as all were necessary to effect a cure or provide relief and because plaintiff requested approval within a reasonable time. Nevertheless, plaintiff is entitled to no further treatment by Dr. Messer but only to treatment by Dr. Kolkin for any orthopaedic concerns. Furthermore, plaintiff is entitled to have Dr. Sampson as an additional authorized treating physician for the purpose of pain medication management in order to effect a cure or provide relief. N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to all reasonably necessary medical treatment related to his compensable injury by accident to the extent that such treatment tends to effect a cure or provide relief, subject to statutory limitations. The greater weight of the evidence demonstrates that the only reasonably necessary medical treatment at this time is pain medication management by Dr. Sampson. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for any additional weekly benefits such as temporary total, temporary partial, permanent total, or permanent partial compensation benefits under the North Carolina Workers' Compensation Act must be, and the same is hereby denied.
2. Drs. Sampson and Kolkin shall be plaintiff's authorized treating physicians. Plaintiff's request for a change of physician to designate Dr. Messer as the authorized treating physician is hereby denied.
3. Defendants shall pay for Dr. Messer's three evaluations and for the CT scan Dr. Messer obtained.
4. Furthermore, defendants shall pay for all reasonably necessary medical treatment related to plaintiff's compensable injury by accident to the extent that such treatment tends to effect a cure or provide relief, subject to statutory limitations. The greater weight of the evidence demonstrates that the only reasonably necessary medical treatment at this time is pain medication management by Dr. Sampson.
5. Defendants shall bear the costs.
This the ___ day of June, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER